FILED

2012 SEP 28 PM 1:40

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ANDRE WILLIAMS,** | ) | **CASE NO. 1:09 CV 2246** |
| | ) | |
| Petitioner, | ) | **JUDGE DONALD NUGENT** |
| | ) | |
| v. | ) | |
| | ) | |
| **BETTY MITCHELL, Warden,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

This matter is before the Court upon Petitioner Andre Williams' ("Williams" or "Petitioner") Motion for Reconsideration in Light of New Authority. (ECF 32). In his Motion, Williams asks the Court to reconsider its prior ruling of September 23, 2011 (ECF 27), denying all motions filed by Williams concerning discovery, an evidentiary hearing, and supplementation of the record. Respondent Betty Mitchell ("Respondent") opposes Williams' Motion for Reconsideration. (ECF 34). For the following reasons, Williams' Motion is **denied**.

### I. Relevant Background

In February 1989, Petitioner Andre Williams was convicted of aggravated murder, attempted aggravated murder, aggravated robbery, aggravated burglary, and attempted rape in connection with

1

the death of George Melnick and attack on Katherine Melnick in their Warren, Ohio home. The following month, the jury recommended that Williams be sentenced to death. The trial court accepted the jury's recommendation and sentenced Williams to death on March 15, 1989.[1]

Williams' convictions and sentence were subsequently upheld on both direct appeal and post-conviction review. *See State v. Williams*, 74 Ohio St.3d 569, 660 N.E.2d 724 (1988); *State v. Williams*, Case No. 97-T-0153, slip op. (11th Dist. Ct. App. October 19, 1998); *State v. Williams*, 706 N.E.2d 788 (Ohio 1999). Williams thereafter filed a Petition for Writ of Habeas Corpus in this Court in March 2000, which was denied on March 28, 2003. *See Williams v. Mitchell*, Case No. 1:99CV2399 (N.D. Ohio) (O'Malley, J) (ECF 21, 45).

After Williams' conviction, the United States Supreme Court determined in *Atkins v. Virginia*, 536 U.S. 304 (2002) that the execution of a mentally retarded person violates the Eighth Amendment's prohibition against "cruel and unusual punishment." Soon after, the Ohio Supreme Court addressed the implications of *Atkins* for Ohio's capital punishment scheme and adopted three criteria for establishing mental retardation: (1) significant sub-average intellectual functioning; (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction; and (3) onset before the age of 18. *State v. Lott*, 97 Ohio St.3d 303, 779 N.E.2d 1011 (Ohio 2002). The court further held that "there is a rebuttable presumption that a defendant is not mentally retarded if his or her IQ is above 70." *Id.*

Williams thereafter filed a motion to stay his federal habeas action and hold it in abeyance while he returned to state court to pursue a claim under *Atkins, supra. Williams*, Case No.

---

[1] For further details about Williams' crimes, trial and subsequent appeals, *see State v. Williams*, 74 Ohio St.3d 569 (1996).

1:99CV2399 (ECF 47). On April 24, 2003, the Court denied the request, reasoning that the habeas petition had been denied and, therefore, there was no action before the Court to stay. *Williams*, Case No. 1:99CV2399 (ECF 48). Williams filed a notice of appeal in the Sixth Circuit. *Williams*, Case No. 1:99CV2399 (ECF 49). On June 27, 2003, the Sixth Circuit granted Williams' motion to stay and hold the case in abeyance to allow him to pursue his state-court *Atkins* litigation. *See Williams v. Bradshaw*, Case No. 03-3626 (6th Cir. June 27, 2003).

On June 9, 2003, Williams filed a petition for post-conviction relief in state court asserting an *Atkins* claim and requesting an evidentiary hearing to adduce evidence on the issue of his mental retardation. Williams supported his petition with the mitigation testimony of a representative of his elementary school regarding his placement in the school's developmentally handicapped program, as well as school records, psychological reports, IQ tests, and an affidavit of a family member. Williams later sought the appropriation of funds to hire an expert to investigate his *Atkins* claim. This request was granted and Williams' expert, Dr. James Eisenberg, submitted a preliminary report, in which he concluded that Williams did not meet the criteria for a diagnosis of mental retardation for *Atkins/Lott* purposes.

The State filed a Motion seeking to dismiss Williams' *Atkins* petition, maintaining that Williams had presented insufficient evidence of mental retardation to warrant either a hearing or judgment in his favor. The State supported its motion with documents obtained from Williams' prison file, including correspondence allegedly authored by Williams and psychological assessments conducted by prison staff. On October 19, 2004, the trial court dismissed Williams' petition without a hearing. The state appellate court reversed, holding that "the trial court's analysis confused the distinction between the dismissal of Williams' petition without hearing and the granting of summary

judgment in the State's favor." *State v. Williams*, 165 Ohio App.3d 594, 600 (Ohio App. 2006). The appellate court remanded the case with instructions for the trial court to either deny the petition without a hearing pursuant to Ohio Rev. Code § 2953.21, rule on the State's summary judgment motion, or hold an evidentiary hearing on Williams' petition. *Id.* at 602.

On remand, the trial court again dismissed Williams' petition without a hearing. Reviewing the evidence presented by the parties, the trial court found that Williams had failed to demonstrate sufficient operative facts demonstrating mental retardation and granted summary judgment in the State's favor. The appellate court affirmed on June 27, 2008. *State v. Williams*, 2008 WL 2582849 (Ohio App. June 27, 2008). Williams appealed to the Ohio Supreme Court, which declined jurisdiction to accept the case for review. *State v Williams*, 120 Ohio St.3d 1453 (Dec. 31, 2008).

After being denied relief in the state courts, Williams sought leave from the Sixth Circuit to file a second petition for writ of habeas corpus, which it granted. (ECF 1). Williams filed his Amended Petition for Writ of Habeas Corpus on October 13, 2009, asserting that habeas relief is warranted under AEDPA provisions 2254(d)(1) and (d)(2) because the state-court judgments were contrary to, and an unreasonable application of, *Atkins* and, further, resulted in an unreasonable determination of the facts in light of the evidence presented. (ECF 6). Respondent filed her Return of Writ on January 21, 2010 (ECF 10), and Williams filed his Traverse on February 23, 2010 (ECF 12). Williams subsequently filed two Notices of Supplemental Authority in support of his Amended Petition and Traverse. (ECF 31, 33).

After the filing of his Traverse, Williams filed a flurry of motions, including a Motion for Evidentiary Hearing (ECF 13), Motion for First Request for Discovery (ECF 14), Motion for Evidentiary Hearing (Supplemental Filing) (ECF 19), and Motion to Expand the Record (ECF 26).

4

In these Motions, Williams sought permission to depose two prison employees (Death Row Case Manager Greg Morrow and prison psychologist Kenneth Covey) regarding documents they had authored that supported the State's motion to dismiss. (ECF 13). Williams also requested an evidentiary hearing, in which he hoped to introduce (1) the report and testimony of psychologist Luc LeCavalier; (2) testimony of several of Williams' family members; (3) testimony from Mr. Morrow and Dr. Covey; and (4) affidavits and/or testimony from several death row inmates indicating they had ghostwritten documents for Williams because of his inability to effectively communicate for himself. (ECF 13). Later, Williams sought to expand the record with Mr. Morrow's deposition testimony in *Hill v. Anderson*, Case No. 96-795 (N.D. Ohio), as well as affidavits from two additional family members. (ECF 26).

Respondent opposed the above motions (ECF 17, 18, and 25), and also filed a Motion to Strike Dr. LeCavalier's Report (ECF 21). Williams filed replies in support of his various motions, opposed Respondent's motion to strike, and supplemented his motion for discovery. (ECF 19, 20, 22, and 23). Respondent replied to Williams' opposition to her motion to strike. (ECF 24).

On September 23, 2011, the Court denied each of Williams' motions and granted Respondent's Motion to Strike. (ECF 27). The Court ruled that, as there was no dispute that Williams' *Atkins* claim had been adjudicated on the merits by the state courts, this Court's determination of Williams' claim was limited to the state court record pursuant to *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011). Accordingly, the Court found that "[a]llowing further factual development would be futile since the Court could not consider the information obtained in further discovery or an evidentiary hearing in resolving Williams' *Atkins*' claim." (ECF 27 at 5). Williams filed a Motion for Reconsideration on October 13, 2011 (ECF 28), which the Court denied. (ECF

5

30).

On August 9, 2012, Williams filed another Motion for Reconsideration. (ECF 32). In this Motion, Williams asks the Court to reconsider its September 2011 Opinion & Order in light of the United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Respondent filed a brief in opposition on August 10, 2012. (ECF 33). It is this Motion that is currently before the Court.

## II. Analysis

In his Motion for Reconsideration, Williams argues the Supreme Court's decision in *Martinez* permits him to fully develop factual support for his *Atkins* mental retardation and ineffective assistance of *Atkins* post-conviction counsel claims. He asserts his *Atkins* counsel unreasonably failed to investigate and present evidence in support of his mental retardation claim and that this failure amounts to ineffective assistance of post-conviction counsel. Williams maintains that, under the equitable principles underlying *Martinez*, his counsel's ineffectiveness constitutes cause for his "default" of the factual development of his *Atkins* claim with the evidence he now seeks to present in these habeas proceedings. This is particularly so, Williams argues, in light of the fact that his first opportunity to raise an *Atkins* defense was during post-conviction proceedings and he was not provided any opportunity in the state courts to argue ineffective assistance of post-conviction counsel. On this basis, Williams argues this Court should reconsider its application of *Pinholster* in denying his motions for discovery, evidentiary hearing and supplementation of the record. (ECF 32).

Respondent disagrees, maintaining that the "narrow scope and non-constitutional basis of the *Martinez* decision gives no reason for this Court to reconsider its prior order." (ECF 34 at 2).

Specifically, Respondent maintains that *Martinez* does not alter the prohibition in 28 U.S.C. § 2254(i) against a "ground for relief" premised on ineffectiveness of counsel in a state post-conviction proceeding. She argues that, unlike the petitioner in *Martinez* who sought to establish cause for the procedural default of a claim of ineffective assistance of trial counsel, Williams seeks to assert a stand-alone claim of ineffective assistance of post-conviction counsel. Respondent maintains that reconsideration is not appropriate under these circumstances because *Martinez* does not impact § 2254(i). Moreover, Respondent argues *Martinez* is an equitable, rather than constitutional, ruling and did not address the issue of whether there is a right to effective assistance of post-conviction counsel. Finally, Respondent notes that, in *Hill v. Anderson*, Case No. 4:96CV795 (N.D. Ohio)(Adams, J) (ECF 148), this Court considered and rejected the contention that *Martinez* warranted reconsideration of prior orders denying discovery and an evidentiary hearing.

In *Martinez*, Arizona state law required claims of ineffective assistance of trial counsel to be raised in state collateral proceedings. *Martinez*, 132 S.Ct. at 1314. In that case, Martinez's post-conviction counsel failed to raise ineffective assistance of trial counsel in his first post-conviction petition. *Id.* at 1313. Over a year later, represented by new counsel, Martinez filed a second post-conviction petition in which he attempted to raise a claim of ineffective assistance of trial counsel. *Id.* at 1314. The state courts dismissed his second petition on the grounds that Martinez should have asserted his ineffective assistance claim in his first post-conviction petition. *Id.* Martinez then filed a petition for writ of habeas corpus in federal court, again raising his ineffective assistance of trial counsel claims. *Id.* He acknowledged the claim was procedurally defaulted but argued he had "cause" for the default, i.e. that his first post-conviction counsel was ineffective in failing to raise ineffective assistance of trial counsel in his first post-conviction petition. *Id.* Relying on *Coleman*

7

*v. Thompson*, 501 U.S. 722 (1991), the district court denied the petition and the Ninth Circuit Court of Appeals affirmed. *Id.* at 1315.

The "precise question" at issue before the Supreme Court was "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Id.* The Court first acknowledged *Coleman*'s holding that "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause,'" but noted that *Coleman* "did not present the occasion to apply this principle to determine whether attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default." *Id.* at 1316. Rather, in *Coleman*, the alleged negligence of counsel was on appeal from an initial-review collateral proceeding and, in that proceeding, the prisoner's claims had been addressed by the state habeas trial court. *Id.* The Court considered this a "key difference" between initial-review collateral proceedings and "other kinds of collateral proceedings" because "[w]hen an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id.* And, the Court noted, "if counsel's errors in an initial-review collateral proceeding do not establish cause to excuse the procedural default in a federal habeas proceeding, no court will review the prisoner's claim." *Id.*

In light of this distinction, the Court recognized a "limited qualification" to *Coleman* and held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. The Court was careful to note the limitations of its holding, however, emphasizing that it was an

8

"equitable" rather than "constitutional" ruling. *Id.* at 1319-20. Moreover, the Court explained:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts . . . It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (citations omitted).

In addition, the Court rejected Arizona's argument that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, barred Martinez from asserting attorney error as cause for a procedural default. Rather, the Court held:

> AEDPA refers to attorney error in collateral proceedings, but it does not speak to the question presented in this case. Section 2254(i) provides that 'the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief.' 'Cause,' however, is not synonymous with 'a ground for relief.' A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. In this case, for example, Martinez's 'ground for relief' is his ineffective-assistance-of-trial-counsel claim, a claim that AEDPA does not bar. Martinez relies on the ineffectiveness of his postconviction attorney to excuse his failure to comply with Arizona's procedural rules, not as an independent basis for overturning his conviction. In short, while § 2254(i) precludes Martinez from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop Martinez from using it to establish 'cause.'

*Id.* (citations omitted).

In his Motion for Reconsideration, Williams argues that "[s]imilar to *Martinez*, the ineffective assistance of postconviction counsel deprived Mr. Williams of the opportunity to present his evidence of mental retardation to the Court." (ECF 32 at 7). Therefore, he argues, "the equitable concerns in *Martinez* should apply here and permit Mr. Williams to present his substantial federal

claim for review" by allowing him to conduct discovery, expand the record, and have an evidentiary hearing. (ECF 32 at 7). Moreover, he argues the rationale of *Martinez* "applies with full force to the application of § 2254(e)" because "[j]ust as the ineffectiveness of counsel is not chargeable to the petitioner for procedural default purposes, as a matter of equity it can no longer be chargeable to the petitioner under § 2254(e) in the limited circumstance where 'the prisoner's counsel' failed to develop the evidence because he was constitutionally ineffective." (ECF 32 at 9). Accordingly, Williams maintains *Martinez* provides him "the avenue to demonstrate cause and prejudice for his failure to properly develop the facts of his claim and thereafter to develop the factual basis for his *Atkins* claim." (ECF 32 at 18).

The Court disagrees. *Martinez* concerned the ability of habeas petitioners to use ineffective assistance of post-conviction counsel as cause to excuse the procedural default of a claim of ineffective assistance of trial counsel. Williams proposes a significant expansion of *Martinez*'s applicability, asking this Court to broaden the holding in that case to allow claims of ineffective assistance of post-conviction counsel to establish "cause" for a "default" of the factual development of an *Atkins* claim in state court. This Court can discern nothing in *Martinez* that suggests the Supreme Court intended its limited holding to apply so broadly and in such a different context. Indeed, the *Martinez* Court took great pains to explain that its holding was a limited one that "does not concern attorney errors in other kinds of proceedings." *Martinez*, 132 S.Ct. at 1320. As the Court observed in *Hill v. Anderson*, Case No. 4:96CV795 (N.D. Ohio), "[d]espite its equitable groundings, *Martinez* does not stand for the proposition that if a habeas petitioner's post-conviction counsel was ineffective, that somehow nullifies the proceedings at issue, excuses any failure to meet AEDPA's requirements, or creates an independent constitutional claim in habeas." *Hill*, Case No.

10

4:96CV795 (N.D. Ohio) (Adams, J.) (ECF 148 at 7).

In short, the Court finds that *Martinez* is not applicable to Williams' various discovery motions and does not effect this Court's analysis of those motions under *Pinholster*. Accordingly, the Court rejects Williams argument that *Martinez* requires reconsideration of this Court's September 2011 Opinion & Order, denying all motions filed by Williams concerning discovery, an evidentiary hearing, and supplementation of the record.[2]

### III. Conclusion

Accordingly, and for the reasons set forth above, Williams' Motion for Reconsideration In Light of New Authority (ECF 32) is denied.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2012

---

[2] Moreover, Respondent has not asserted procedural default in regard to any of Williams' claims, so Williams cannot employ *Martinez* to support his requests in order to demonstrate cause for the procedural default of those claims.